CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

AUG 14 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ALLAN BROUGHMAN, | ) | |
|     Plaintiff, | ) | Civil Action No.: 7:08cv00548 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LARRY S. CARVER, | ) | By: Samuel G. Wilson |
|     Defendant. | ) | United States District Judge |

    Plaintiff Allan Broughman, a builder of custom bolt action rifles, brings this declaratory judgment action under 28 U.S.C. § 2201 against Defendant Larry S. Carver in his official capacity as an Industry Operations Investigator with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Broughman claims that Carver erroneously determined that Broughman needed a manufacturer's license under the Gun Control Act of 1968, 18 U.S.C. § 921 et seq. ("GCA"), to continue engaging in his rifle building activities. The matter is before the court on cross-motions for summary judgment. The court finds that in applying the plain and ordinary meaning of the GCA's statutory definitions, Broughman was a manufacturer of firearms and therefore was required to obtain a manufacturer's license. Accordingly, the court grants Carver summary judgment.

### I.

    Broughman, the sole operator of Broughman's Gun Shop in Covington, Virginia, builds custom rifles. (Administrative Record ("A.R.") 13.) To create these rifles, Broughman "purchases complete firearms actions (frames or receivers[1] with internal parts) from other licensees, and purchases rifled barrels from other sources." (First Am. Compl. ¶ 6.) He then

---

    [1]Pursuant to ATF regulations, a "firearm frame or receiver" is "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 478.11.

"threads and chambers the barrels to fit the actions, blues the actions, and makes wooden stocks which he fits to the actions and barrels." Id. He sells each firearm for several thousand dollars.

Broughman maintained a dealer's license under the GCA until Carver observed Broughman "assembling a barrel, a receiver, and a stock for a customer" during a routine compliance inspection of Broughman's business in late July 2006. (A.R. 21.) After Broughman explained that "he had assembled the firearms and sold them for several thousand dollars," id., Investigator Carver issued Broughman a Report of Violations. The first violation in that report was for "fail[ing] to obtain a license to manufacture firearms;" it required Broughman to discontinue any manufacturing activity until he applied for and obtained a manufacturer's license.[2] (A.R. 30.)

In September 2006, Broughman, through counsel, requested that the ATF remove this violation because Broughman's activities did not constitute manufacturing, and he therefore did not need a manufacturer's license. The ATF invited Broughman to attend a conference to discuss his violations, but Broughman declined. The ATF ultimately decided not to remove the violation due to its "long standing position" that Broughman's activities "are considered to be manufacturing activities, necessitating a manufacturer's license." (A.R. 3.) That October, Broughman obtained a manufacturer's licence. In his application he described his firearm activities as "gunsmith building custom bolt action rifles" (A.R. 90); on a supplemental form he also noted that he engaged in "gunsmith building custom bolt action rifles on actions made from other companies" (A.R. 92). That same month, Broughman also allowed his dealer's license to

---

[2]Broughman's second violation, not at issue here, was for failing to properly maintain his Firearms Acquisition and Disposition Record required under 27 C.F.R. § 478.125(e). (A.R. 30.)

expire.[3] (A.R. 62.)

Pursuant to 28 U.S.C. § 2201, Broughman now brings this declaratory judgment action against Carver in his official capacity.[4]

---

[3] Under the GCA, there are differences between the obligations that accompany a manufacturer's license and a dealer's license. For example, the licensing fees are slightly more expensive in the long-term for manufacturers, compare 18 U.S.C. § 923(a)(1)(B) (manufacturers of firearms other than destructive devices must pay a licensing fee of fifty dollars per year) and 27 C.F.R. § 478.42(a)(2) (same) with 18 U.S.C. § 923(a)(3)(B) (dealers in firearms other than destructive devices must pay a two hundred dollar licensing fee for the first three years, with a ninety dollar renewal fee every three years thereafter) and 27 C.F.R. § 478.42(c)(2) (same); manufacturers have additional record keeping obligations, compare 27 C.F.R. § 478.123 (record keeping obligations specific to manufacturers) with 27 C.F.R. § 478.124 (firearms transaction record required for all licensed importers, manufacturers, and dealers) and 27 C.F.R. §§ 478.124a, .125(e) (firearms receipt and disposition records for dealers); and manufacturers must engrave each manufactured firearm with a serial number, see 18 U.S.C. § 923(i); 27 C.F.R. § 478.92, although ATF regulations permit manufacturers to apply for a variance, 27 C.F.R. § 748.92(a)(4).

[4] The court finds that jurisdiction is proper under 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq. The APA "waives the government's sovereign immunity from suit and permits federal court review of final agency actions, when the relief sought is other than money damages and the plaintiff has stated a claim 'that an agency or an officer or employee thereof acted or failed to act in an official capacity.'" COMSTAT Corp. v. Nat'l Science Found., 190 F.3d 269, 274 (4th Cir. 1999) (quoting 5 U.S.C. § 702); see also 5 U.S.C. § 704 (specifying that only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review"). "[A]n agency action may be considered 'final' only when the action signals the consummation of an agency's decisionmaking process *and* gives rise to legal rights or consequences." COMSTAT Corp., 190 F.3d at 274 (emphasis in original). Here, the ATF's determination that Broughman must obtain a manufacturer's license to continue his rifle building activities is a "final agency action" because it represents the consummation of the ATF's decisionmaking process and has given rise to legal rights and consequences. See Sendra Corp. v. Magaw, 111 F.3d 162, 166 (D.C. Cir. 1997) (ATF's refusal to register a company's machinegun receivers under the National Firearms Act constitutes "final agency action").

In reviewing the ATF's determination, this court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. This court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. § 706(2)(A).

3

## II.

Carver argues summary judgment is appropriate because Broughman is a manufacturer of firearms and not a dealer in firearms, and Broughman counters with the opposite. These arguments presume a definitional dichotomy that does not exist, and in reviewing the GCA's statutory and regulatory framework, the court finds that the dispositive question is simply whether Broughman is a manufacturer of firearms. The court concludes that he is, and accordingly grants Carver summary judgment.

Under the GCA, "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms . . . until he has filed an application with and received a license to do so from the Attorney General." 18 U.S.C. § 923(a). In light of this unmistakably clear directive, this case distills to one simple question: under the Act, is Broughman is a manufacturer of firearms? If so, he needs a manufacturer's license.

The GCA defines a manufacturer as "any person engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution." 18 U.S.C. § 921(a)(10).[5] A "firearm" under the GCA includes "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," 18 U.S.C. § 921(a)(3)(A), or "the frame or receiver of any such weapon," § 921(a)(3)(B). Because the GCA does not define the term "manufacturing," the court applies the "fundamental canon of statutory construction . . . that, unless otherwise defined, words will be interpreted as taking their ordinary,

---

[5]Although not at issue, the court notes that the statute further defines the term "engaged in the business," as applied to a manufacturer of firearms, as "a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured." 18 U.S.C. § 921(a)(21)(A).

4

contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979); see also BP Am. Prod. Co. v. Burton, 549 U.S. 84, 91 (2006) ("Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.").

In applying the ordinary meaning of "manufacturing," the court concludes that Broughman meets the statutory definition of manufacturer.[6] Even by his own words, Broughman "build[s] custom bolt action rifles" by assembling the component parts of a firearm. (A.R. 90.) He purchases actions and barrels, fits the barrel to the action, blues the action, and attaches a wooden stock. The cumulative result of his labor is a "weapon . . . designed to . . . expel a projectile by the action of an explosive," a firearm that Broughman sells for commercial gain. § 921(a)(3)(B). Under these specific circumstances, the court readily concludes that Broughman is engaged in the business of manufacturing firearms and must therefore apply for and obtain a manufacturer's license. § 923(a).[7]

---

[6] Broughman urges the court to adopt the dictionary definition of manufacturing that the Supreme Court adopted in Am. Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1 (1931), when the Court interpreted a patent statute: "'[m]anufacture,' . . . is 'the production of articles for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by handlabor or by machinery'; also 'anything made for use from raw or prepared materials.'" Id. at 11. Even if the court adopted this definition, Broughman's rifle building activities constitute manufacturing: whether by handlabor or machinery, Broughman is taking prepared materials–a firearm frame or receiver, barrel, and stock–and giving them a new form and combination–a "weapon . . . designed to . . . expel a projectile by the action of an explosive." § 921(a)(3)(A).

[7] The ATF previously promulgated a regulation that defined "manufacture" and "the various derivatives thereof" to include "making, putting together, altering, any combination of these, or otherwise producing a firearm." 53 Fed. Reg. 10480, 10491 (Mar. 31, 1988). The District Court of South Carolina declared that regulation to be arbitrary and capricious because including the word "alter" within the regulatory definition could potentially confuse gunsmiths. Nat'l Rifle Ass'n v. Brady, No. 2:88-2518-8 (D.S.C. Aug. 15, 1989); see (Pl.'s Cross Mot. S.J. Ex. B.) The ATF did not appeal this invalidation, Nat'l Rifle Ass'n v. Brady, 914 F.2d 475, 478 n.2 (4th Cir. 1990), and removed this definition from its regulations, 56 Fed. Reg. 32507 (July

5

Broughman acknowledges that he "may be 'creating' a 'weapon . . . which will . . . expel a projectile by the action of an explosive.'" (Pl.'s Cross Mot. S.J. 12.) However, he argues that he only needs a dealer's license because he meets the statutory definition of dealer. His argument is misplaced in light of the statutory and regulatory framework. A "dealer" under the Act means "(A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker." 18 U.S.C. § 921(a)(11). Because the CGA defines a firearm as a "frame or receiver," Broughman, by attaching a barrel and stock to previously purchased frames and receivers, is arguably "engaged in the business of . . . making or fitting special barrels, stocks, or trigger mechanisms to firearms," and therefore meets the statutory definition of dealer. § 921(a)(11)(B).[8] But to insist that he only needs a dealer's license because he meets the definition of dealer incorrectly presumes that the GCA's definition of "manufacturer" and "dealer" are mutually exclusive.

---

17, 1991).
    Neither that regulation, nor the District Court of South Carolina's decision, control the outcome of this case. Here, the court is not deciding whether an ATF regulation is arbitrary and capricious, but is instead interpreting the statutory language and concluding that Broughman's firearm building activities fall within the plain and ordinary meaning of "manufacturing."

    [8]The court notes that the statute further defines the term "engaged in the business," as applied to this particular definition of dealer, as "a person who devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit, but such term shall not include a person who makes occasional repairs of firearms, or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms." 18 U.S.C. § 921(a)(21)(D). Broughman, however, does not maintain that he only engages in his firearm building activities on an occasional basis.

They are not,[9] and nothing in the GCA forecloses the possibility that Broughman could be both a manufacturer of firearms and a dealer of firearms. In fact, as the parties otherwise recognize, § 923(a) presupposes the possibility that a single person may need multiple licenses to cover his firearm activities: if a person is engaged in the business of manufacturing firearms, he must procure a manufacturer's license, irrespective of whether he also is engaged in the business of dealing in firearms, or also engaged in the business of importing firearms. And in further recognition of § 923(a)'s overlap, the ATF has promulgated a regulation simplifying the licensing requirements for a person who manufacturers firearms and then deals in those same firearms: under those circumstances, "it shall not be necessary for a . . . licensed manufacturer to also obtain a dealer's license in order to engage in business on the licensed premises as a dealer in the same type of firearms authorized by the license to be . . . manufactured." 27 C.F.R. § 478.41(b). The mere possibility that Broughman deals in firearms does not erase the stubborn fact that he manufacturers firearms, and must therefore obtain a manufacturer's license. Accordingly, the court rejects Broughman's argument and grants Carver summary judgment.[10]

---

[9]This point becomes much more obvious when comparing the GCA's definitions with those contained in the National Firearms Act of 1934, 26 U.S.C. § 5801 et seq., because that Act defines an "importer" as "any person engaged in the business of importing or bringing firearms into the United States," 26 U.S.C. § 5845(*l*); a "manufacturer" as "any person who is engaged in the business of manufacturing firearms," § 5845(m); and a "dealer" as "any person, *not a manufacturer or importer*, engaged in the business of selling, renting, leasing, or loaning firearms and shall include pawnbrokers who accept firearms as collateral for loans," § 5845(k) (emphasis added).

[10]The parties have devoted much of their efforts in defining the level of deference the court owes to the ATF's interpretation of § 921(a)(11)(B)'s definition of dealer. The dispositive question before the court, however, is whether Broughman is a manufacturer under the Gun Control Act, and because the unambiguous statutory language supplies the answer, the court need not determine the deference it owes the ATF's interpretation. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("If a court, employing traditional

7

Case 7:08-cv-00548-SGW-mfu   Document 33   Filed 08/14/09   Page 7 of 8   Pageid#: 360

## III.

For the foregoing reasons, Carver's Motion for Summary Judgment is **GRANTED** and Broughman's Motion for Summary Judgment is **DENIED**.

**Enter**: This 14th day of August, 2009.

UNITED STATES DISTRICT JUDGE

---

tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."); Saintha v. Mukasey, 516 F.3d 243, 251 (4th Cir. 2008) ("Pursuant to Chevron, the plain meaning of the statute controls if the provision in question is unambiguous.").

    Nonetheless, the court notes that the ATF's characterization of § 921(a)(11)(B)'s definition of dealer as the "gunsmith" exception is reasonably consistent with the statutory framework. See Webster's Ninth New Collegiate Dictionary 543 (1990) (defining "gunsmith" as "one who designs, makes, or repairs small firearms"). Under the GCA, a gunsmith who repairs a firearm is not a manufacturer because the gunsmith is only servicing a fully-manufactured "weapon . . . designed to . . . expel a projectile by the action of an explosive." § 921(a)(3)(B). The same is true for a gunsmith who purchases a fully-manufactured weapon, "fit[s] special barrels, stocks, or trigger mechanisms" to it, and then resells the firearm for commercial gain; it might be said that no manufacturing occurs in that situation because the gunsmith is only modifying a fully-manufactured weapon. But a gunsmith, like Broughman, who assembles component parts to create such a weapon is a manufacturer under the GCA, and accordingly must obtain a manufacturer's license.

8